UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEAN MUND,

               Plaintiff,

     -against-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
------------------------------------------------------------X

**DECISION AND ORDER**
13-CV-2788 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

This is a review of a denial of Disability Insurance Benefits ("DIB") by the Commissioner of Social Security ("Commissioner"). Plaintiff Jean Mund ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner which denied her application for DIB. Before the Court are motions for judgment on the pleadings from each party. For the reasons set forth below, the Commissioner's motion is GRANTED and Plaintiff's cross-motion is DENIED.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a fifty-two year old woman who was born on December 7, 1962. Dkt. 16 ("R.") at 128. Plaintiff is 5' 7" or 5' 8" and weighed approximately 210 pounds in 2011 and 2012. *Id.* at 131, 172, 182. She has a Master's Degree in Health Care Administration and was employed as a Registered Dietician from 1990 until 2010. *Id.* at 15, 30-31, 132, 137. She was let go from her job in October 2010 because she was unable to perform her duties. *Id.* at 15, 33, 132, 137. Since then, she has been receiving unemployment benefits. *Id.* at 15, 32. Plaintiff lives with her boyfriend in a house on the second level. *Id.* at 15, 32. Plaintiff states that her boyfriend does the majority of the household chores such as cooking, cleaning, grocery shopping, and laundry. *Id.* at 38-39.

Plaintiff alleges that she is undergoing treatment for a variety of complications, including spinal disease, fibromyalgia, sleep apnea, and thyroid disease. *Id.* at 34, 60, 131, 165. Plaintiff

1

has also reported suffering from hypertension, mitral valve prolapse with fast heart beats, bilateral carpal tunnel syndrome with neuropathy, and obesity. *Id.* at 165, 169. As of November 28, 2012, Plaintiff was taking Cytomel for her Hashimoto's thyroiditis, Lopressor for her high blood pressure, diclofenac for her chronic fatigue and fibromyalgia, and injections for her SI joint dysfunction. *Id.* at 34. Plaintiff also uses a BiPAP machine to treat her sleep apnea. *Id.* at 35-36. Plaintiff alleges that she started suffering from fibromyalgia and sleep apnea in 2006, and since then, she has gained fifty pounds. *Id.* at 37-38.

Plaintiff filed an application for DIB on March 8, 2012, alleging that she has been disabled since October 29, 2010. R. at 11. Plaintiff's application was initially denied on July 26, 2012. *Id.* at 47. Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on August 6, 2012, and the hearing was held on November 28, 2012. *Id.* at 11; *see also id.* at 23-24, 25-46. Plaintiff was represented by counsel. R. at 11, 23-24, 30, 68. ALJ Patrick Kilgannon ("the ALJ") issued his unfavorable decision on December 28, 2012. *Id.* at 18. Plaintiff appealed the decision to the Appeals Council, which denied her request for review. *Id.* at 1-5.

On May 9, 2013, Plaintiff filed a complaint against the Commissioner pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner which denied her application for DIB. Dkt 1 ("Compl"). The Commissioner filed a motion for judgment on the pleadings on November 26, 2013. Dkt. 14 ("C's Memo"). Plaintiff cross-moved for judgment on the pleadings on January 9, 2014. Dkt. 11 ("P's Memo") at 1.

The Commissioner argues the Court should affirm the ALJ's determination that Plaintiff was not disabled because the ALJ properly evaluated the evidence and applied the correct legal

standards to the facts. C's Memo at 17-24. Plaintiff, on the other hand, argues that the Court should reverse the ALJ's decision, or at least remand it, because the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating physician. P's Memo at 8-9. The Court will first explain the standard for reviewing an appeal from a decision of the Commissioner before evaluating Plaintiff's argument.

## DISCUSSION

### I. Legal Standards

#### A. Standard of Review

When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure

that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks omitted) (citing *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not of the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

To fulfill this burden, the ALJ must "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

### B. Statutory and Regulatory Standards

In order to qualify for DIB, the Social Security Act requires the claimant to prove she has a disability. *See* 42 U.S.C. § 423(a)(1)(E). "Disability" is defined in the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A).

The Commissioner must evaluate whether an individual qualifies as disabled using a five step process promulgated by the Social Security Administration ("SSA"):

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider h[er] disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111-12 (2d Cir. 2010) (brackets and ellipses in original) (citations omitted); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four in the analysis. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citations omitted). At step five, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant could perform even with her disability or disabilities. *Salmini*, 371 F. App'x at 112 (citation omitted); *see also Selian*, 708 F.3d at 418.

### C. The ALJ's Decision

On December 28, 2012, the ALJ denied Plaintiff's application for DIB. R. at 8-18. Applying the five step process promulgated by the SSA, the ALJ determined at step one that Plaintiff has not engaged in substantial gainful activity since October 29, 2010, the alleged onset date. *Id.* at 13. At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar and cervical degenerative disc disease, sleep apnea, mild bilateral carpal tunnel

syndrome[,] and obesity." *Id.* The ALJ also noted that Plaintiff had a "multitude of non-severe physical impairments," such as hypertension, mitral valve prolapse, Hashimoto's disease, and neuropathy. *Id.* At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the [relevant] listed impairments." *Id.* at 14.

At step four of the SSA-promulgated process, the ALJ performed a thorough analysis of the Plaintiff's residual functional capacity ("RFC") *Id.* at 14-17. The ALJ first recognized Dr. Kilkenny's report that Plaintiff's sleep apnea disorder was completely reversed upon Plaintiff's use of a BiPAP breathing machine. *Id.* at 15. Next, the ALJ noted that Plaintiff's only complications related to her weight seemed to be the result of difficulty sleeping as opposed to difficulty of working. *Id.* With respect to Plaintiff's spine conditions, the ALJ considered the opinion of Dr. Rosenburg, who reported that Plaintiff had "results suggestive of L3 and L5 nerve pathology." *Id.* The ALJ further recounted the results of Plaintiff's September 29, 2011 and March 22, 2012 MRIs. *Id.* Regarding Plaintiff's leg pain, the ALJ relied on Dr. Rowe's finding that Plaintiff received complete relief from her pain when she took certain medications. *Id.* Similarly, the ALJ found that the record showed Plaintiff's wrist condition was eased by wrist splints and "her hand examinations have been normal." *Id.* (relying on findings of Dr. Shum and Dr. Kulick).

Regarding Plaintiff's overall ability to move, the ALJ considered Dr. Flores's report which found Plaintiff was "limited in prolonged walking, sitting, standing, climbing stairs[,] and heavy lifting[,]" but which also determined that Plaintiff's "gait was normal without the use of an assistive device; her squatting was adequate; [and] her hand dexterity and fine manipulation were

6

normal[.]" *Id.* at 16. Dr. Flores further opined that Plaintiff's "bending was normal," as were her extremities, joints, respiratory and chest examinations, and muscle strength. *Id.*

Next, the ALJ found Plaintiff's testimony regarding her conditions and pain was not fully credible, as Plaintiff "sat comfortably and pain free during the hearing," "was [at times] contradicted by the medical evidence," and mentioned that she both had walked a long distance and slipped while walking her dog in the not so distant past. *Id.* Plaintiff also reported that her boyfriend drove her everywhere, but the ALJ observed that Plaintiff drove herself to the ALJ's hearing. *Id.* at 16-17.

Lastly, the ALJ discussed the report of Dr. George Ayyad, Plaintiff's treating physician. *Id.* at 17. The ALJ determined that Dr. Ayyad's statement that the Plaintiff is limited to "less than sedentary work is not supported by the record." *Id.* Specifically, the ALJ opined that Dr. Ayyad's report indicates:

> [Plaintiff] has had a consistently normal gait without the use of an assistive device, her physical examinations have consistently shown a normal neurological system despite her degenerative disc disease, she was not taking pain medication at times when her back pain was described as severe, she responded extremely well to both physical therapy and sacroiliac injections, she had not had surgery, and the record shows that [Plaintiff] maintained a fairly active lifestyle long after her alleged onset date.

*Id.* The ALJ therefore found that Plaintiff "has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk approximately 6 hours in an 8 hour workday; sit for approximately 6 hours in an 8 hour workday with normal breaks; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing stooping, kneeling, crouching, and crawling; no manipulative limitations with the exception of no repetitive rotation, flexions[,] or extension of the neck; and as far as

environmental limitations, [Plaintiff] should avoid hazards, such as moving machinery and unprotected heights." *Id.* at 14.

Taking into account his analysis of the Plaintiff's RFC and the testimony of the vocational expert, the ALJ ultimately found Plaintiff would be able to return to her past work as a Dietician. *Id.* at 17. Therefore, the ALJ denied Plaintiff's application for DIB because Plaintiff had not been under a disability from the period of October 29, 2010 to the date of the ALJ's decision. *Id.* at 17-18.

## II. Analysis

Plaintiff argues that the ALJ erred in denying Plaintiff's application for DIB because the ALJ's decision is not supported by substantial evidence and the ALJ did not apply the correct legal standards. P's Memo at 6-9. Specifically, Plaintiff contends that the ALJ erred in dismissing the findings of Plaintiff's treating physician, Dr. George J. Ayyad ("Dr. Ayyad"). *Id.* at 8-9.

"The SSA recognizes a treating physician rule of deference to the views of the physician who had engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). "The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian*, 708 F.3d at 418 (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *Green-Younger*, 335 F.3d at 106-07); *see also* 20 C.F.R. §404.1527(c)(2) (The opinions of a treating source will only be given controlling weight by the reviewing ALJ if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."); *Burgess*, 537 F.3d at 128 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))

8

("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts.") (ellipses in original).

"In order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. §404.1527(c)(2) (setting out the factors for the ALJ to consider in determining how much weight a treating physician's opinion should receive: the "length of treatment relationship and the frequency of examination," "[n]ature and extent of the treatment relationship," "[s]upportability," [c]onsistency . . . with the record as a whole," "[s]pecialization," and "any factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion"). Failure on the part of the ALJ to provide "good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted) (citing *Snell*, 177 F.3d at 133); *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

The parties do not dispute that Dr. Ayyad is Plaintiff's treating physician. P's Memo at 8; C's Memo at 18-19. Dr. Ayyad treated Plaintiff for her thyroid disease, general pain, and

9

hypertension. R. at 133, 150-51. Dr. Ayyad also referred Plaintiff to a number of physicians for treatment of specific issues. The reports of those doctors are described in more detail below.

Dr. Ayyad filed a report on September 18, 2012 in which he concluded that Plaintiff could only lift 10 pounds occasionally or frequently, could only stand and walk for less than two hours in an 8-hour workday, could only sit for less than 6 hours in an 8-hour workday, is limited in pushing or pulling in both the upper and lower extremities, and could climb frequently but could balance, kneel, crouch, crawl, or stoop only occasionally. *Id.* at 201-04.

The ALJ discounted Dr. Ayyad's report because his findings were not supported by the record. *Id.* at 17. The ALJ described in detail the findings of Drs. Kilkenny, Rosenburg, Rowe, Shum, Flores, Montalbano, and Plaintiff's physical therapists before finding that Dr. Ayyad's report conflicted with the more consistent reports of all of the other physicians involved in Plaintiff's case. *Id.* at 14-17. The ALJ therefore only credited the parts of Dr. Ayyad's report that were supported by the record, which were the sections recognizing Plaintiff's carpal tunnel was asymptomatic and that her sleep apnea was treated by use of BiPAP. *Id.* at 17. Otherwise, the ALJ did not give controlling weight to Dr. Ayyad's position.

The ALJ provided a good explanation as well as multiple reasons for not crediting Dr. Ayyad's position. The ALJ's decision therefore meets the Second Circuit's standard requiring "good reasons" not to give controlling weight to a treating physician's opinions. The ALJ described the limited medical evidence supporting Dr. Ayyad's report and discussed extensively all of the other physicians' medical evidence that conflicted with Dr. Ayyad's findings. R. at 14-17; *see also* 20 C.F.R. §404.1527(c)(2); *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129). Further, there is no evidence that Dr. Ayyad was a specialist as he identifies himself as an

internist on his report, so it was not error for the ALJ not to mention his specialty. *See Selian*, 708 F.3d at 418 (citation omitted); *see also* R. at 204.

Furthermore, the ALJ properly evaluated Dr. Ayyad's report in light of the other medical evidence before him. Dr. Ayyad's report was "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32 (internal citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2). It was therefore appropriate for the ALJ to give it little to no weight in assessing the Plaintiff's RFC.

As detailed below, Dr. Ayyad's opinions are inconsistent with the other medical experts on record. For ease of explanation, the below chart provides a summary:

| Dr. Ayyad | Checked boxes to indicate Plaintiff could only lift 10 pounds occasionally or frequently, could only stand and walk for less than two hours in an 8-hour workday, could only sit for less than 6 hours in an 8-hour workday, is limited in pushing or pulling in both the upper and lower extremities, and could climb frequently but could balance, kneel, crouch, crawl, or stoop only occasionally. R. at 201-04. |
|---|---|
| Dr. Kilkenny | Reported that "the application of BiPAP . . . completely reversed [Plaintiff's] sleep-disordered breathing. This pressure setting should be continued indefinitely." *Id.* at 199. |
| Dr. Rowe | Reviewed and reported to Dr. Ayyad that Plaintiff "ambulates with a normal gait and station without assistive device" and that, other than some tenderness of her back, Plaintiff "has full range of motion in flexion and extension" and "5/5 strength in the lower extremities in all muscle groups tested." *Id.* at 184. Plaintiff also reported to Rowe that she experienced "complete relief of her pain" through use of an SI joint block. *Id.* at 181. |
| Dr. Shum | After performing a neurological exam for Dr. Ayyad, reported "[t]here was normal [muscle] tone and bulk in all extremities. Power was 5/5 in all extremities. There was no muscle atrophy or fasciculations. . . . There was normal gait. Toe, heel[,] and tandem walk were normal." *Id.* at 185. |
| Dr. Flores | Noted based on personal observations that Plaintiff had driven to the appointment and that Plaintiff reported living in a second-story apartment. *Id.* at 167. Observed that Plaintiff's range of motion was limited with respect to straight leg raising, but that "[b]ending is within normal limits" and "[j]oints are within normal limits." *Id.* at 168. Wrote that muscle strength was "5/5," that Plaintiff "can do finger snapping, finger rolling, finger opposition," and observed "[n]o subluxation, contracture, ankylosis, redness, or heat." *Id.* at 169. "[Plaintiff's [p]osture and gait are normal. Does not need a cane for ambulation. No difficulty getting on and off the examination table. Can do |

| | |
|---|---|
| | tandem, toe, and heel walking. Can squat half the way. Bending is within normal limits." *Id.* Ultimately concluded Plaintiff's "status of employment" based upon physical examination is limited in fully squatting" and "limited in prolonged walking, sitting, standing, climbing stairs[,] and heavy lifting." *Id.* |
| Dr. Schwartz | Found that Plaintiff has normal posture and gait and can walk without a cane. R. at 49. Determined Plaintiff had occasional limitations with climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* at 50. Noted, however, that while Plaintiff had a history or joint and muscle pains, she drove herself to her appointment and lives in a second floor home which is accessible only by stairs. *Id.* at 51. |
| Dr. Kulick | Reported that Plaintiff's carpal tunnel syndrome was asymptomatic in mid-2012. *Id.* at 182. |
| Dr. Montalbano | Reported Plaintiff injured her ankle in February 2011 when she was walking her dog and slipped on a patch of ice. *Id.* at 172; 175. |
| Dr. Alastra | Reported at least some of Plaintiff's back and leg pain symptoms stemmed from her fall in February 2011, rather than anything starting before October 2010. *Id.* at 188, 192. |
| Physical Therapists | Throughout 2012, Plaintiff reported to various physical therapists that she was feeling better and able to walk more; she was only in pain when she "walk[ed] a lot" or "walk[ed] fast." *Id.* at 190-91. |

From the above review of the medical evidence, it is evident that only Dr. Ayyad opined that Plaintiff could not perform her previous work. All the other doctors submitted opinions consistent with the ability of Plaintiff to perform light work as defined under 20 C.F.R. § 404.1567(b). "Given the [inconsistency of Dr. Ayyad's findings], the ALJ was free to discount [Dr. Ayyad's] opinions in favor of a broader view of the medical evidence, notwithstanding [Dr. Ayyad's] status as the 'treating physician.'" *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008). Accordingly, Plaintiff's motion for judgment on the pleadings must be DENIED.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings is DENIED, and the Commissioner's motion for judgment on the pleadings is GRANTED. This matter is hereby dismissed. The Clerk of Court is respectfully instructed to close this case.

SO ORDERED.

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 13, 2015
Brooklyn, New York